IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MASTER MAURICE ALSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19-CV-96 |
| | ) | |
| DOCTOR LOCKLEAR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiff, Master Alston, brought this § 1983 suit against two correctional officers and a physician at Scotland Correctional Institution. Mr. Alston maintains two inmates stabbed his eye with a makeshift knife, causing glaucoma that resulted in total vision loss in that eye. He asserts constitutional claims under the Eighth Amendment against Sergeant Maurice Grant and Officer Shanika Stanton for failure to protect him in the time leading up to the stabbing and against Officer Stanton and Dr. Connie Locklear Jones for failure to provide medical treatment after the assault. He also asserts state claims against Dr. Jones for medical malpractice, negligence, and gross negligence.

Mr. Alston has not exhausted his administrative remedies as to his claims against Sergeant Grant and Officer Stanton; those claims will be dismissed. There are disputed questions of material fact as to his medical malpractice claim against Dr. Jones; that claim will proceed to trial. As to Mr. Alston's other claims against Dr. Jones, he has not offered sufficient evidence to create disputed questions of material fact.

I.    Facts

The evidence is viewed and summarized in the light most favorable to Mr. Alston.

In September 2016, Mr. Alston was a prisoner at Scotland Correctional Institution, where he asked to be placed in protective custody because he had concerns over his safety. Doc. 78-1 at ¶¶ 2–3. While he was in protective custody, inmates went into his cell and took some of his personal property. *Id.* at ¶¶ 4–5. Mr. Alston told Sergeant Grant to review surveillance footage because the inmates who stole from him wanted to attack him. *Id.* at ¶ 5. No official met with him. *Id.* at ¶ 6. Sergeant Grant testified there was some sort of investigation into Mr. Alston's request for protective custody, Doc. 78-2 at 11, but no report was produced during discovery despite a prison policy to create such reports. *Id.* at 6–7; Doc. 78-9 at 7–8.

After about a month in administrative segregation, Mr. Alston was released to the general population. Doc. 78-1 at ¶¶ 6–7. The defendants did not produce any written reports related to Mr. Alston's release from segregation even though creating such reports is required under prison policy. Doc. 78-9 at 8.

A few days after his release into the general population, around the end of October or beginning of November, two prisoners attacked Mr. Alston in his cell with a makeshift knife, stabbing him in the eye several times. Doc. 78-1 at ¶¶ 8–9. Officer Stanton was supervising Mr. Alston's cell block when he was attacked and would have been able to see the inmates enter his cell. *Id.* at ¶ 12. When Officer Stanton conducted her routine rounds after the attack, she saw some injury to Mr. Alston's eye, but she did not take him to receive medical treatment. *Id.* at ¶¶ 13–14.

2

Several days later, in November 2016, another officer took Mr. Alston to receive medical treatment for his eye, where he saw Dr. Jones.[1] *Id.* at ¶¶ 14–16. Dr. Jones examined him and gave him an ice pack. *Id.* at ¶ 15. Mr. Alston says no one asked how he injured his eye. *Id.* at ¶ 16. Despite noting evidence of trauma, Doc. 60-4 at 118, 120, Dr. Jones did not refer Mr. Alston to an optometrist. Doc. 60-1 at ¶ 20.

Mr. Alston was next treated for eye issues at the end of 2017, when he had lost vision in his left eye. Doc. 78-1 at ¶ 20. He saw a specialist, Dr. Toler, in the summer of 2018. *Id.* at ¶ 21; Doc. 78-4 at 4. Dr. Toler diagnosed Mr. Alston with glaucoma and told him that earlier treatment may have prevented some loss of sight. Doc. 78-4 at 5, 11–12; Doc. 60-4 at 321.

Other facts shown by the evidence will be discussed as they become relevant.

## II.  Mr. Alston's Claims Against Sergeant Grant and Officer Stanton

Mr. Alston asserts § 1983 claims against Sergeant Grant and Officer Stanton for deliberate indifference to his safety and against Officer Stanton for deliberate indifference to his serious medical needs arising out of the alleged assault by other inmates in late October or early November 2016.[2] Doc. 1. He has sued them in their official and individual capacities, seeking compensatory and punitive damages. *Id.* at 3–

---

[1] Mr. Alston identified Connie Locklear Jones as "Doctor Locklear" in the complaint. The Court refers to her as Dr. Jones throughout this Order, as that appears to be her name.

[2] Although Mr. Alston's claim against Officer Stanton for deliberate indifference to his serious medical needs is not completely clear on the face of his *pro se* complaint, Doc. 1, the defendants have not contended that he has not pleaded that claim. The Court will construe Mr. Alston's complaint liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

3

4, 15. He also seeks a declaratory judgment that Sergeant Grant and Officer Stanton acted unlawfully. *Id.* at 14–15.

### a. Exhaustion

Sergeant Grant and Officer Stanton assert Mr. Alston's constitutional claims against them are barred because he has not exhausted his administrative remedies. Doc. 63 at 12–14. It is their burden to prove this affirmative defense. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *Woodhouse v. Duncan*, 741 F. App'x 177, 178 (4th Cir. 2018) (per curiam).

The main purpose of the PLRA's exhaustion requirement is "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Moore*, 517 F.3d at 726. Thus, "to satisfy the exhaustion requirement, grievances generally need only be sufficient to alert the prison to the nature of the wrong for which redress is sought." *Wilcox v. Brown*, 877 F.3d 161, 167 n.4 (4th Cir. 2017) (cleaned up). A prisoner is required to "complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (cleaned up).

Sergeant Grant and Officer Stanton have offered undisputed evidence that the North Carolina Department of Public Safety's three-step Administrative Remedy Procedure applied to Mr. Alston. Doc. 64-1. Those procedures allowed Mr. Alston to

4

submit grievances about any "action, incident, policy, or condition within the facility" and to seek any meaningful remedy. *Id.* at 1.

Mr. Alston filed two potentially relevant grievances, one in September 2016 and the other in March 2017.³ *See* Doc. 1-1, Doc. 78-6. In a grievance from September 2016, about two months before Mr. Alston was allegedly stabbed, Mr. Alston states that other inmates stole property from his cell because Sergeant Soto failed to secure his cell door. Doc. 78-6 at 3. At the end of his grievance, he writes "the camera don't lie now my life in danger." *Id.* This grievance was submitted before Mr. Alston was assaulted, so it cannot be read to put prison officials on notice of an assault that happened later. Nor could it give the prison a chance to resolve a claim that the prison failed to prevent it. Moreover, it was directed solely to Sergeant Soto's conduct and Mr. Alston's property.⁴

In a grievance from March 2017, which Mr. Alston attached to his complaint, Mr. Alston stated that he was in danger from a correctional officer, Officer Jacobs, and that Officer Jacobs told her officers to write him up. Doc. 1-1. He also notes that he "got [his] eye blacked" and he was stabbed eight times but does not offer further explanation. *Id.* The relevant procedures do not require that Mr. Alston specifically identify Sergeant Grant and Officer Stanton in a grievance to satisfy exhaustion. *See id.* (grievance form),

---

³ Sergeant Grant and Officer Stanton have not produced evidence that Mr. Alston filed no other grievances during the relevant time, but Mr. Alston does not contend that he has filed any additional grievances related to his claims. Instead, he maintains the September 2016 and March 2017 grievances are sufficient to satisfy the exhaustion requirement. Doc. 77 at 11–15.

⁴ In the September 2016 grievance, Mr. Alston specifically complains about his possessions being stolen and Sergeant Soto's failure to secure his cell door. Doc. 78-6 at 3. The only remedy he sought in his grievance was replacement of his possessions and for Sergeant Soto to be "written up." *Id.*

5

Doc. 64-1 (ARP policy); *see also Moore*, 517 F.3d at 726. But as noted *supra*, the grievance must "be sufficient to alert the prison [officials] to the nature of the wrong for which redress is sought." *Wilcox*, 877 F.3d at 167 n.4 (cleaned up).

In his March 2017 grievance, Mr. Alston notes that Officer Jacobs specifically is endangering his life and references being stabbed eight times, but it is clear from his grievance that he feels unsafe because of Officer Jacobs and her actions, not because of threats from other inmates. *See* Doc. 1-1. He explicitly requested being transferred from the facility and for her to be investigated for her conduct. *Id.* He did not raise any concerns about the way he had been treated by any prison official before or immediately after a stabbing some months earlier, much less about any acts or omissions by Sergeant Grant or Officer Stanton related to a stabbing by two inmates.

Neither grievance relates to the same "action, incident, policy, or condition within the facility" as Mr. Alston's constitutional claims against Sergeant Grant and Officer Stanton. *Compare Moore*, 517 F.3d at 728–29 (holding a prisoner's grievances about his medical care for pancreatic illness and hepatitis C did not alert prison officials to his additional gout problem) *with Fordham v. Keller*, No. 13-CV-617, 2017 WL 1091876, at *5 (M.D.N.C. Mar. 22, 2017) (holding a prisoner's grievance satisfied exhaustion because it specifically identified a problem for which the prisoner sought redress and placed the prison on notice). And neither grievance contains sufficient detail to provide the prison a fair opportunity to address the wrongs that form the basis of Mr. Alston's claims against Sergeant Grant and Officer Stanton—their failure to protect him from other inmates and failure to provide adequate medical care. *See Kelly v. Lewis*, No. 12-

6

CV-1385, 2017 WL 354267, at *6–7 (M.D.N.C. Jan. 24, 2017); *Hamilton v. Daniels*, No. 13-CT-3048, 2013 WL 6795008, at *3 (E.D.N.C. Dec. 20, 2013).[5]

Given its decision on exhaustion, the Court does not reach the more complicated questions raised by Mr. Alston's failure-to-protect claim against Sergeant Grant and Mr. Alston's deliberate indifference claim against Officer Stanton. But the failure-to-protect claim against Officer Stanton is straightforward. So in the alternative in part, the Court concludes that Mr. Alston has not shown there is a disputed question of material fact as to his failure-to-protect Eighth Amendment claim against Officer Stanton.

Deliberate indifference based on failure to protect requires that a prison official has a "sufficiently culpable state of mind," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), which requires "evidence suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety." *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014). A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw [that] inference." *Farmer*, 511 U.S. at 837.

---

[5] Mr. Alston objects to a copy of his grievance that Sergeant Grant and Officer Stanton provided as evidence, Doc. 64-2, contending the defendants did not produce the evidence as required by Rule 26(a) and Rule 26(e). Doc. 77 at 10. Mr. Alston included a copy of his grievance with his complaint, Doc. 1-1, but the version Sergeant Grant and Officer Stanton produced as evidence contains information about his grievance appeal process and an additional page in which Mr. Alston complains further about Officer Jacobs. Doc. 64-2 at 1, 3–6. Assuming without deciding Sergeant Grant and Officer Stanton's version of the grievance was not produced in discovery and the Court should not consider it, that would not affect the Court's exhaustion decision. Mr. Alston's contentions that he satisfied the exhaustion requirement were based on information available in the version of his grievance he attached to his complaint, Doc. 77 at 12–14, and that version affirmatively establishes that he did not exhaust his administrative remedies as to Sergeant Grant or Officer Stanton. *See* Doc. 1-1.

7

Case 1:19-cv-00096-CCE-LPA   Document 98   Filed 04/18/22   Page 7 of 19

Mr. Alston testifies that Officer Stanton was supervising the cell block when he was attacked and that she would have been able to see anyone entering his cell. Doc. 78-1 at ¶ 12. He has not directed the Court's attention to any evidence that Officer Stanton knew he was in physical danger from someone in that cell block. Nor has he pointed to any evidence that it was unusual or created an increased risk of harm for inmates to go into another inmate's cell. While actual knowledge of a serious risk of harm may be proven by direct or circumstantial evidence, the fact that Officer Stanton observed inmates enter Mr. Alston's cell is not enough on its own to create a disputed question of material fact as to her deliberate indifference to his safety.[6]

### III. Mr. Alston's Claims Against Dr. Jones

Mr. Alston asserts a § 1983 claim against Dr. Jones, a family medicine physician who treated him in prison, for deliberate indifference to his serious medical needs and claims for medical malpractice, negligence, and gross negligence. Doc. 1. He sued Dr. Jones in her official and individual capacities, seeking compensatory and punitive damages. *Id.* at 3, 15. He also seeks a declaratory judgment stating that Dr. Jones violated his Eighth Amendment rights. *Id.* at 14–15.

#### a. Official Capacity Claim—Sovereign Immunity

The evidence is undisputed that Dr. Jones is an employee of the State of North Carolina. *See* Doc. 1 at 11; Doc. 60-1 at ¶ 5. Mr. Alston's § 1983 claim seeking

---

[6] Mr. Alston also objects to an incident report, Doc. 64-5, and testimony about the incident report, Doc. 64-4, under Federal Rules of Civil Procedure 26(a) and 26(e), contending Sergeant Grant and Officer Stanton did not disclose the evidence during discovery. Doc. 77 at 10. The Court has not considered this evidence for purposes of this motion.

8

damages against her in her official capacity is barred by sovereign immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). This claim will be dismissed.

Mr. Alston contends the claim against Dr. Jones in her official capacity is not appropriate for dismissal to the extent he seeks injunctive relief. Doc. 70 at 19–20. His complaint, however, contains no request for injunctive relief. *See* Doc. 1 at 14–15.

### b. Exhaustion

Dr. Jones asserts that the grievance attached to Mr. Alston's complaint did not exhaust his administrative remedies as to his constitutional claim against her. Doc. 60 at 6. As noted *supra*, the defendant has the burden to show that the plaintiff did not use "all available remedies in accordance with [the prison's] applicable procedural rules[.]" *Moore*, 517 F.3d at 725 (cleaned up); *see also Jones,* 549 U.S. at 218.

Dr. Jones did not attach copies of the relevant procedures to her motion. Nor did she direct the Court's attention to any other evidence in the record that identified the procedures Mr. Alston was required to follow when he had a complaint about his medical care.[7] The grievance provided by Mr. Alston shows that he advised prison officials of an injury to his eye just a few months after the alleged stabbing. Doc. 1-1. There is no evidence that the procedures required him to specifically mention Dr. Jones or medical

---

[7] While Sergeant Grant and Officer Stanton submitted a policy in support of their motion, Doc. 64-1, Dr. Jones did not mention that policy in her brief and there is no evidence that the same policy applies to an inmate's problems with medical care.

9

care in the grievance. Dr. Jones has not met her burden to show lack of exhaustion. *See Moore*, 517 F.3d at 725; *Woodhouse*, 741 F. App'x at 178.

### c. Deliberate Indifference to Mr. Alston's Serious Medical Needs

Mr. Alston contends that Dr. Jones violated his Eighth Amendment rights because she was deliberately indifferent to his glaucoma and delayed treatment for the condition, which resulted in loss of vision in his left eye. Doc. 70 at 12–15. As noted *supra*, the Court views the evidence in the light most favorable to Mr. Alston.

Dr. Jones treated Mr. Alston for an eye injury in November 2016. Doc. 78-1 at ¶¶ 15–16; Doc. 60-1 at ¶ 14. She only gave Mr. Alston an ice pack for his eye and told him he would be fine. Doc. 78-1 at ¶ 15. Mr. Alston does not say he told Dr. Jones he was stabbed in the eye, but no one asked him how his eye was injured. *Id.* at ¶ 16.

In medical records from November 2016, Dr. Jones noted that Mr. Alston reported blurred vision and that his eye had diffuse redness, watery discharge, a subconjunctival hemorrhage, and that there was evidence of trauma. Doc. 60-4 at 118, 120. Dr. Jones visually examined his left eye and his pupils and performed a fundoscopic exam to look for nerve damage behind Mr. Alston's eye, and she did not find any problems. Doc. 60-1 at ¶¶ 16–17, 20. Mr. Alston does not offer any specific evidence that Dr. Jones did not do these things during the examination; indeed, he relies on the medical note to assert that Dr. Jones saw evidence of trauma.

When someone in the prison's medical department treated Mr. Alston's eye injury again, over a year later in December 2017, his vision in his left eye had diminished. Doc. 78-1 at ¶ 20; Doc. 60-4 at 221–24. There is no evidence that he sought treatment for his

10

eye injury or vision problems before then. Dr. Jones testifies without contradiction that she treated Mr. Alston for other conditions after November 2016 and that he never complained of vision issues during those visits. Doc. 60-1 at ¶ 27. There are no references to vision loss or eye problems in Mr. Alston's medical records between November 2016 and December 2017. *See generally* Doc. 60-4.

Mr. Alston saw an eye specialist in the summer of 2018. Doc. 78-1 at ¶ 21.[8] Dr. Toler, the eye specialist, diagnosed glaucoma and told Mr. Alston that earlier treatment may have prevented some loss of sight. Doc. 60-4 at 321; Doc. 78-4 at 11–12.

Deliberate indifference is a "particularly high bar to recovery." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). It is a "higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Deliberate indifference requires "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (cleaned up). It is "not enough that an official *should* have known of a risk," *Jackson*, 775 F.3d at 178, as noted *supra*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw [that] inference." *Farmer*, 511 U.S. at 837. Still,

---

[8] There is no evidence that Dr. Jones was responsible for the delay in treatment from December 2017 to the summer of 2018 and the Court does not understand Mr. Alston to assert this delay as part of his claim against Dr. Jones. To the extent he does, summary judgment would be appropriate in favor of Dr. Jones.

11

where a "risk is so obvious that it had to [be] known," a prison official may be liable. *Makdessi v. Fields*, 789 F.3d 126, 129 (4th Cir. 2015).

There is no evidence that Dr. Jones knew Mr. Alston had glaucoma or that Mr. Alston's risk of glaucoma was so obvious that Dr. Jones must have known about it. Mr. Alston has not provided any evidence that Dr. Jones knew he was stabbed in the eye, and it is undisputed that glaucoma does not cause pain or obvious physical symptoms. Doc. 70 at 4 n.1; *see also* Matthew Cooke, *Don't Be Fooled by Glaucoma—The Silent Sight Thief*, MAYO CLINIC HEALTH SYS., https://www.mayoclinichealthsystem.org/hometown-health/speaking-of-health/dont-be-fooled-by-glaucoma-the-silent-sight-thief (last visited Apr. 15, 2022). Dr. Jones testified without contradiction that Mr. Alston did not complain of "significant pain" when she treated him in November 2016. Doc. 60-1 at ¶ 15. And Mr. Alston has not provided evidence that Dr. Jones refused to treat his eye injury or was aware of anything other than blurred vision at the time of his initial treatment. While Dr. Jones knew Mr. Alston sustained an eye injury and had some blurred vision, that alone does not show she was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" or that she drew that inference. *Farmer*, 511 U.S. at 837; *see also Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

Mr. Alston contends that Dr. Jones should have accounted for the risk of glaucoma and referred him to an eye specialist when treating his eye injury in November 2016, Doc. 70 at 14–15, but disagreements over an inmate's proper medical care "fall short of showing deliberate indifference." *Jackson*, 775 F.3d at 178. Even assuming without

12

deciding that Dr. Jones was negligent in failing to identify Mr. Alston's risk of glaucoma in November 2016 and in failing to refer him to an eye specialist, that does not establish actual subjective knowledge of his serious medical condition. *See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999).

Dr. Jones's motion for summary judgment will be granted as to Mr. Alston's § 1983 claim.

### d. Medical Malpractice

Dr. Jones contends that Mr. Alston's medical malpractice claim should be dismissed for failing to comply with North Carolina's medical malpractice certification requirement in North Carolina Rule of Civil Procedure 9(j). Doc. 58 at 17–18. In the alternative, she contends that Mr. Alston has not produced sufficient evidence to get to the jury. *Id.* at 18.

The North Carolina Rules of Civil Procedure require a plaintiff asserting a medical malpractice claim to comply with Rule 9(j) or face dismissal. *See Thigpen v. Ngo*, 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002). Rule 9(j) requires the plaintiff to include in or with his complaint an assertion that an expert in the same field reviewed the medical care at issue and is willing to testify that the medical care did not comply with the applicable standard of care. N.C. R. Civ. P. 9(j). Federal courts have dismissed medical malpractice claims if the complaint does not include the pre-filing certification required by Rule 9(j), holding the certification requirement is a substantive element of medical malpractice. *See, e.g.*, *Lauer v. United States*, No. 12-CV-41, 2013 WL 566124, at \*4 (W.D.N.C. Feb. 13, 2013) (collecting cases).

13

The Fourth Circuit, however, recently held that a similar certification requirement for medical malpractice claims under West Virginia law did not apply to a medical negligence claim asserted in federal court under the Federal Tort Claims Act. *See Pledger v. Lynch*, 5 F.4th 511, 517–24 (4th Cir. 2021). In *Pledger*, the plaintiff brought an FTCA claim in a United States District Court based on a violation of West Virginia medical negligence law, which requires pre-suit notice and a screening certificate of merit from a health care provider who qualifies as an expert under state law. *Id.* at 517–18. In the certificate, similar to North Carolina's Rule 9(j), "the expert must set out and explain her judgment that the applicable standard of care was breached in a way that resulted in injury or death." *Id.* at 518 (cleaned up). Because the plaintiff did not comply with West Virginia's pre-suit requirement, the district court dismissed his suit. *Id.* at 516.

In determining whether the West Virginia certification law conflicted with, and was supplanted by, the Federal Rules of Civil Procedure, the Fourth Circuit applied the two-step analytical framework for mediating conflict between state law and the Federal Rules set forth in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). *Pledger*, 5 F.4th at 518; *see also Hanna v. Plumer*, 380 U.S. 460 (1965). First, the court asked whether the Federal Rules "answer[ed] the question in dispute," and determined they did. *Pledger*, 5 F.4th at 518–19. The court noted that the Federal Rules set forth clear pleading standards in Rule 8, Rule 9, and Rule 12, and that those clear standards did not contain a heightened requirement for medical negligence plaintiffs. *Id.* at 519–20. Further, Rule 11, which addresses frivolous filings, states explicitly a pleading "need *not* be verified or accompanied by an affidavit." *Id.* at 520.

14

Because the Federal Rules set forth pleading requirements that were "impossible to reconcile" with West Virginia's certification requirement, the state law could "not apply to [the] federal-court action under step one of the *Shady Grove* framework." *Id*. *Shady Grove*'s second prong was also met because the Federal Rules are not outside Congress's constitutional rulemaking power or the underlying statutory authorization. *Id*. at 521. Since both prongs of the *Shady Grove* analysis were satisfied, the Federal Rules, not West Virginia's certification law, governed. *Id*. at 523–24.

*Pledger* suggests the certification requirements in Rule 9(j) do not apply to medical negligence claims filed in federal courts. The Fourth Circuit specifically held that "state-law certification requirements like West Virginia's are inconsistent with the Federal Rules of Civil Procedure, and thus [are] displaced by those rules in federal court." *Id*. at 514. This broad language indicates the holding in *Pledger* is not confined only to federal-court FTCA actions but applies to all federal actions. *Id*. at 518; *see DeBlois v. Corizon Health, Inc.*, No. 20-CV-1816, 2021 WL 3142003, at *1, *9 (D. Md. July 23, 2021) (applying Maryland malpractice law in a diversity action and noting "*Pledger* appears to instruct that [plaintiff's] suit cannot be dismissed for failure to comply with pre-filing certificate requirements"). Citing *Pledger*, federal courts exercising diversity jurisdiction and supplemental jurisdiction over state medical malpractice claims have held a state's certification requirements do not apply. *See, e.g.*, *Albright v. Christensen*, 24 F.4th 1039, 1049 (6th Cir. 2022) (holding Michigan medical malpractice affidavit-of-merit and presuit-notice requirements do not apply in diversity actions); *Doe # 4 v. Raleigh Gen. Hosp. LLC*, No. 20-CV-00865, 2021 WL 4496230, at

15

*4 (S.D. W.Va. Sept. 30, 2021) (holding West Virginia certification requirement did not apply in diversity action); *Johnson v. W. Va. Univ. Bd. of Governors*, No. 21-CV-380, 2022 WL 908496, at *13 (S.D. W.Va. Mar. 28, 2022) (exercising supplemental jurisdiction over medical malpractice claim and holding West Virginia certification law did not apply); *see also Vickers v. United States*, No. 20-CV-92, 2021 WL 5769991, at *10 (W.D.N.C. Dec. 6, 2021) (stating in FTCA action "in light of *Pledger*, [North Carolina's] Rule 9(j) does not apply in federal court").

Dr. Jones contends that the *Shady Grove* analysis does not apply because Mr. Alston's claim is before the court on supplemental jurisdiction, and not in the form of an FTCA cause of action. Doc. 58 at 18. But Dr. Jones provides no support for this contention, and courts routinely apply the *Shady Grove* analysis to claims within their supplemental jurisdiction. *See Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 127–28 (D.D.C. 2018) (collecting cases). Because *Shady Grove* applies, the Court need not "wade into *Erie*'s murky waters." *Shady Grove*, 559 U.S. at 398.

Any failure to comply with Rule 9(j) is not a basis to dismiss his medical malpractice claim filed against Dr. Jones in federal court. Rule 9(j) is inconsistent with the Federal Rules of Civil Procedure's pleading requirements. *See Pledger*, 5 F.4th at 518; *Vickers*, 2021 WL 5769991, at *10.

As to the merits, there is a genuine issue of material fact about whether Dr. Jones committed medical malpractice when she did not refer Mr. Alston to an eye specialist in November 2016. Mr. Alston has provided evidence of the applicable standard of care; Dr. Toler, Mr. Alston's treating optometrist, testified he would have expected a referral to

16

optometry based on the results of Mr. Alston's eye exam. Doc. 78-4 at 13. There is evidence of a breach; Dr. Jones did not refer Mr. Alston to an eye doctor in November 2016. Doc. 60-1 at ¶ 20. And there is evidence of causation. Dr. Toler informed Mr. Alston that because Mr. Alston did not receive timely treatment, he lost sight in his eye, Doc. 78-4 at 11–12, and at his deposition Dr. Toler agreed that this was so.[9] Under certain factual scenarios raised by the evidence, Mr. Alston's vision loss could have been stabilized earlier and he would not have continued to lose vision.

Dr. Jones denies negligent treatment and has offered significant evidence in support of her contention, including evidence that Mr. Alston was never stabbed in the eye. There is also a significant causation issue. But her evidence raises questions of fact for the jury; courts evaluate the evidence in the light most favorable to the non-moving party at the summary judgment stage. In light of this material dispute, summary judgment as to Mr. Alston's medical malpractice claim will be denied.[10]

### e. Gross Negligence

"An act or conduct rises to the level of gross negligence when the act is done purposely and with knowledge that such act is a breach of duty to others, *i.e.*, a conscious disregard of the safety of others." *Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 13, 727

---

[9] The Court appreciates the ambivalence in Dr. Toler's testimony. But at summary judgment the court evaluates the evidence in the light most favorable to the plaintiff. The Court anticipates denying the motion to exclude Dr. Toler's testimony in toto and allowing the defendant to object to particular questions or answers at trial.

[10] Although Mr. Alston's federal claim against Dr. Jones did not survive summary judgment, the Court will exercise its discretionary supplemental jurisdiction over his state medical malpractice claim against Dr. Jones, given the late stage of this litigation and an upcoming trial date. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009).

17

S.E.2d 675, 684 (2012) (cleaned up). Mr. Alston has not directed the Court's attention to any evidence that Dr. Jones acted with a conscious disregard to Mr. Alston's safety when treating him for his eye injury. Doc. 70 at 20–22. The evidence is insufficient to raise a disputed question of material fact, so summary judgment will be granted as to Mr. Alston's gross negligence claim.

### f. Ordinary Negligence

Mr. Alston also asserts a negligence claim against Dr. Jones based on DPS policy that a prisoner is only referred to an eye specialist if the prisoner has vision loss or an orbital fracture, which he claims "prevented [him] from receiving glaucoma treatment in a timely fashion." Doc. 70 at 21. He has not offered any basis for holding Dr. Jones individually liable for the Department's policy. Summary judgment as to Mr. Alston's negligence claim will be granted.

## IV. Conclusion

Mr. Alston has not exhausted his administrative remedies as to his constitutional claims against Sergeant Grant and Officer Stanton. Nor has he raised a genuine dispute of material fact as to his Eighth Amendment, negligence, and gross negligence claims against Dr. Jones. As such, those claims will be dismissed. A genuine issue of material fact exists, however, as to Mr. Alston's medical negligence claim against Dr. Jones, so that claim will proceed to trial.

It is **ORDERED** that:

1. The motion for summary judgment by defendants Grant and Stanton, Doc. 62, is **GRANTED**. All claims against these defendants are **DISMISSED**.

2. The motion for summary judgment by Dr. Jones, Doc. 57, is:

    a. **GRANTED** as to all claims against her in her official capacity;

    b. **GRANTED** as to the Eighth Amendment claim for deliberate indifference to serious medical needs, the gross negligence claim, and the ordinary negligence claim; and

    c. **DENIED** as to the medical negligence claim against Dr. Jones. This is the only issue for trial.

This the 18th day of April, 2022.

                                                    UNITED STATES DISTRICT JUDGE