IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MASTER MAURICE ALSTON, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:19-CV-96 |
| CONNIE LOCKLEAR JONES M.D., | ) ) ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

This matter is set for trial on May 31, 2022, on Mr. Alston's remaining claim of medical negligence against defendant Dr. Jones. Pending are Dr. Jones' motion to exclude expert testimony, Dr. Jones' motion in limine, and Mr. Alston's motion in limine. Dr. Jones' motion to exclude expert testimony will be denied. As to the parties' motions in limine, to a limited extent they will be granted. Otherwise, the motions raise issues that are better handled at trial and will be denied without prejudice.

**1. Dr. Jones' Motion to Exclude Expert Testimony**

Dr. Jones moves to exclude expert testimony at trial by Dr. Robert Toler and Dr. Clayton Wisely. Doc. 83. Both Dr. Toler and Dr. Wisely have treated Mr. Alston for glaucoma, and Mr. Alston designated them as persons who may offer expert testimony as non-retained experts. *See* Doc. 86-1. Dr. Jones contends that neither can provide expert medical opinions to a reasonable degree of medical certainty as to proximate cause. Doc. 86 at 5.

When Dr. Jones contended that Mr. Alston's medical malpractice claim should be dismissed for failure to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure, the Court previously held that Rule 9(j) does not apply. *See* Doc. 98 at 13–16. Similarly, Mr. Alston's failure to obtain a 9(j) certificate does not bar the expert testimony of either treating physician. As to the testimony of Dr. Wisely, Dr. Jones makes no other argument for exclusion, so the motion will be denied.

As to Dr. Toler, Dr. Jones' arguments are more in the nature of a sufficiency-of-the-evidence challenge, and it is not completely clear which of Dr. Toler's opinions that Dr. Jones seeks to exclude. Mr. Alston need not prove his entire case through just one witness. As a treating health care provider, Dr. Toler can explain the kind of treatment he provided and why, and his opinions are likely to be helpful to the jury. The motion will be denied as to Dr. Toler. To the extent a particular question or answer raises specific concerns, Dr. Jones can object at trial.

## 2. Dr. Jones' Motion in Limine

### a. Medical Witnesses

Dr. Jones raises a different challenge to the admissibility of testimony by Dr. Toler and Dr. Wisely in her motion in limine, Doc. 95, contending that they are not qualified to offer testimony about the standard of care because they specialize in a different area of medicine than she does. *Id.* at 6. Dr. Jones is a family medicine physician, Doc. 60-1 at ¶ 4, Dr. Toler is an optometrist, Doc. 95-1 at 1, and Dr. Wisely is an ophthalmologist. *Id.* at 2. Thus, Dr. Jones contends, the testimony of Dr. Toler and Dr. Wisely cannot meet the standards for admissibility in N.C. R. Evid. 702(b), which requires, *inter alia*, that an

2

expert witness testifying about the standard of healthcare in a medical malpractice action must specialize in the same specialty or a similar specialty that includes the performance of the procedure that is the subject of the complaint as the party against whom the testimony is offered. *See* N.C. Gen. Stat. § 8C-1, Rule 702(b).

Dr. Jones assumes without discussion that the state rule of evidence governing expert testimony in medical negligence cases applies. Ordinarily, the Federal Rules of Evidence control the admissibility of expert testimony. *See In re C.R. Bard, Inc. MDL. No. 2187, Pelvic Repair Sys. Prods. Liab. Litig.*, 810 F.3d 913, 919 n.1 (4th Cir. 2016); *Creekmore v. Maryview Hosp.*, 662 F.3d 686, 690 (4th Cir. 2011). But there are good reasons for following a state evidentiary rule if the claim at issue is governed by state law, as is the case here, and the rule of evidence is intertwined with the substantive law. *See Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 109–10 (4th Cir. 1995); *Creekmore*, 662 F.3d at 690.

In *Creekmore*, for example, the Fourth Circuit held that the district court did not abuse its discretion in finding an expert's testimony was admissible under a Virginia evidence rule applicable to medical negligence cases. 662 F.3d at 690, 693. In so doing, the court noted that because the expert testimony was required for a medical malpractice claim under state law to prove the standard of care, "the sufficiency of its substance" was governed by state law. *Id.* at 690. The court implied it therefore was appropriate to follow the intertwined state rule of evidence. *Id.* (citing *Hottle*, 47 F.3d at 110).

Since the decision in *Creekmore*, numerous district courts in the Fourth Circuit have generally applied special state evidentiary rules applicable to expert testimony in

3

medical negligence cases where state law otherwise applies. *See N.O. v. Alembik*, 160 F. Supp. 3d 902, 904 (E.D. Va. 2016), *aff'd*, 649 F. App'x 895 (4th Cir. 2017); *Hysell v. Raleigh Gen. Hosp.*, No. 18-CV-1375, 2020 WL 3130423, at *3 (S.D. W. Va. June 12, 2020); *Washington v. Brooks*, No. 20-CV-88, 2022 WL 89171, at *12 (E.D. Va. Jan. 7, 2022). This appears to be the consensus view across circuits.[1]

Mr. Alston contends that *Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021) forecloses application of N.C. R. Evid. 702(b) in federal court, Doc. 107 at 3–4, but the holding in *Pledger* does not seem to apply here. *Pledger* involved a case in which the Federal Rules of Civil Procedure conflicted with state law and it did not address under what circumstances state evidentiary rules apply in federal court. 5 F.4th at 517–21.

Assuming the state evidence standard for admissibility applies, Dr. Jones' motion as framed is largely a red herring. Mr. Alston does not assert that Dr. Jones was negligent in the specific way she herself treated Mr. Alston's eye injury, that she failed to comply with the standard of care applicable to optometrists or ophthalmologists, or that family medicine doctors should be held to the standard of care applicable to eye specialists. Mr. Alston claims Dr. Jones negligently failed to refer him to a specialist.

---

[1] In holding that state expert opinion rules apply in medical negligence cases before federal courts on diversity, supplemental jurisdiction, or under the FTCA, other circuits have explicitly pointed to Fed. R. Evid. 601, which requires "in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." These courts have held that Fed. R. Evid. 601 "requires federal courts to apply state rules for expert witness qualification when determining the competency of expert witnesses to testify regarding medical malpractice claims that turn on questions of state substantive law." *Coleman v. United States*, 912 F.3d 824, 831 (5th Cir. 2019); *accord Legg v. Chopra*, 286 F.3d 286, 289–92 (6th Cir. 2002); *McDowell v. Brown*, 392 F.3d 1283, 1294–95 (11th Cir. 2004); *Liebsack v. United States*, 731 F.3d 850, 855–57 (9th Cir. 2013).

4

To this extent, the matter is better evaluated at trial after Mr. Alston has had a chance to lay an appropriate foundation with these witnesses. If, as seems likely, North Carolina's requirements for expert testimony in a medical malpractice action apply, Dr. Jones may be correct that the testimony from Mr. Alston's experts about the standard of care is not admissible. But it may be, for example, that Mr. Alston's treating providers, based on their training and experience, are familiar with the standard of care applicable when any health care provider evaluates whether to make referrals to optometrists or ophthalmologists and that they use the same basic eye exam used by Dr. Jones and other family physicians that determines whether a referral to an eye specialist is appropriate. *See, e.g.*, *Roush v. Kennon*, 188 N.C. App. 570, 574–76, 656 S.E.2d 603, 606–07 (2008) (holding a general dentist testifying about the standard of care relevant to extracting a tooth qualified as an expert in a case involving an oral and maxillofacial surgeon defendant because the general dentist had significant experience with oral surgery). Dr. Jones' motion in limine will be denied without prejudice to renewal at trial.

Dr. Jones makes one final challenge to the testimony of Dr. Toler and Dr. Wisely, contending they should not be allowed to testify about future medical expenses. Doc. 95 at 8–9. Mr. Alston designated both to testify about the impacts of delayed treatment, Doc. 95-1, which logically includes future treatment likely to be needed and, if the witness has knowledge, what such treatments are likely to cost. The motion in limine is denied without prejudice to objection at trial if and when this testimony is offered, should Mr. Alston be unable to lay a sufficient foundation.

5

### b. Dismissed Claims

Dr. Jones asks that Mr. Alston not be allowed to mention his claims that have been dismissed or offer evidence relevant only to dismissed claims. Doc. 95 at 1–2. That is a generally sensible rule, and Mr. Alston has not stated any intention to mention these claims. *See generally* Doc. 107. The Court will preclude all counsel and witnesses from referring to claims that have been dismissed, though not necessarily to the underlying facts, if they are otherwise relevant and raise no Fed. R. Evid. 403 concerns. If and when Dr. Jones believes Mr. Alston is offering evidence irrelevant to the remaining claim, she can object at trial.

### c. Testimony by Mr. Alston on Causation

Dr. Jones asks that Mr. Alston not be allowed to testify about medical issues outside his personal experience. Doc. 95 at 3–4. There is nothing to indicate Mr. Alston has any medical training, and he will not be allowed to testify as to causation. To the extent he testifies about what treating physicians other than Dr. Jones told him, such testimony is unlikely to be admissible for the truth of those statements. But it may be admissible for more limited purposes, such as to explain why Mr. Alston took or did not take action. Mr. Alston will be prohibited from offering his own testimony as to causation; beyond this Dr. Jones can object at trial.

### d. Prison Rules and Regulations

Dr. Jones seeks to exclude any evidence or testimony about prison rules or regulations. *Id.* at 4–5. Mr. Alston agrees that certain policies are no longer relevant given the court's summary judgment rulings. Doc. 107 at 9. Beyond this, the Court is

6

not entirely clear on this motion. Dr. Jones has not identified with clarity what rules and regulations are at issue, explained why they are not relevant, or made a clear argument as to why otherwise relevant prison rules or regulations would not be admissible. If Dr. Jones herself identified an eye trauma assessment protocol as applicable to Mr. Alston's care, it is difficult to understand why that would not be admissible. *See id.* With no context, the Court cannot evaluate whether and to what extent it might or might not be appropriate to question Mr. Alston about whether certain rules or regulations were or were not followed. The motion will be denied without prejudice to objection at trial.

To the extent the motion is directed to evidence of and about a federal Bureau of Prisons standard, the Court likewise does not have enough information to make an informed decision at this point. Neither party has been clear about what these standards say nor have they directed the Court's attention to any case law. The Court will evaluate this at trial, if and when such evidence is offered and Dr. Jones objects.

### e. Undisputed Matters.

Dr. Jones also asks the court to prohibit mention of several other items as to which Mr. Alston has made no argument to the contrary. Doc. 95 at 9–12. As Mr. Alston has not expressed any intention to use exhibits during opening statements, the Court will preclude both sides from doing so. Otherwise, Dr. Jones' requests cover evidence that is generally inadmissible or that raises substantial Fed. R. Evid. 403 concerns, and the Court will prohibit counsel and the witnesses from mentioning or asking about the following:

1) The statutory cap on non-economic damages;
2) Liability insurance;

7

3) Settlement discussions;

4) Application of *res ipsa loquitur*;

5) Golden Rule arguments;

6) Evidence suggesting a party will pay fees to a testifying expert witness;

7) Prior lawsuits, claims, or alleged "bad acts" by Dr. Jones;

8) Unspecified "safety rules" or other standards not specifically identified by a knowledgeable witness.

### 3. Mr. Alston's Motion in Limine

#### a. Mr. Alston's Criminal History

Mr. Alston contends that he should not be cross-examined about the fact of his felony convictions. Doc. 97 at 2. First, as to any convictions that occurred more than ten years ago, Mr. Alston says, and Dr. Jones does not deny, that Dr. Jones has not given reasonable written notice of her intent to use such evidence. That evidence will be excluded.

As to the conviction and sentence Mr. Alston is presently serving, the parties have not provided the Court with any information about this conviction, and the Court does not even know what crimes are at issue. Without this information, the Court cannot make the evaluation called for by Fed. R. Evid. 609. Dr. Jones shall advise the Court and Mr. Alston's counsel outside the presence of the jury before making specific reference to details of Mr. Alston's conviction and sentence of current confinement or before asking Mr. Alston about the conviction. If such questions are allowed, the Court expects to limit them to "the name of the crime, the time and place of conviction, and the punishment,"

8

*United States v. Boyce*, 611 F.2d 530, 530 (4th Cir. 1979) (per curiam); *accord United States v. Mitchell*, 1 F.3d 235, 245 (4th Cir. 1993); *United States v. Howell*, 285 F.3d 1263, 1270 (10th Cir. 2002) ("After conducting the Rule 403 balancing, the court may determine . . . certain aspects of evidence of [a] conviction[] are properly excluded."). The Court will give a limiting instruction on request, telling the jury to consider the evidence only to the extent it bears on Mr. Alston's credibility.

To the extent Mr. Alston contends he should not be cross-examined about the specific acts leading to his conviction, Doc. 97 at 3, the motion is tentatively granted. If the Court allows cross-examination about the crime of conviction and the sentence, or admits the criminal judgment, that should be sufficient for the jury to evaluate Mr. Alston's credibility. More than that is likely to lead to a waste of time and to significantly increase the likelihood of unfair prejudice. *See Mitchell*, 1 F.3d at 245. If, however, Mr. Alston attempts to explain away the convictions or to deny his guilt or otherwise makes the underlying facts leading to his conviction relevant, the Court will revisit this issue at Dr. Jones' request.

Pursuant to Fed. R. Evid. 403, the motion is tentatively granted to the extent Mr. Alston seeks to prohibit Dr. Jones from asking him about arrests or other aspects of his criminal history. Doc. 97 at 2–5. Extrinsic evidence is inadmissible under Fed. R. Evid. 608(b) to the extent it might be offered as relevant to credibility, and otherwise no showing has been made that any such evidence would fall within the parameters of Fed. R. Evid. 404(b)(2).

9

### b. Mr. Alston's Prison Disciplinary Record

Mr. Alston asks the Court to prohibit Dr. Jones from offering evidence of the infractions he has incurred while incarcerated. Doc. 97 at 2. Dr. Jones contends these are relevant to Mr. Alston's credibility and "propensity for truthfulness." Doc. 99 at 3. Under Fed. R. Evid. 608(b), "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack the witness's character for truthfulness." To the extent Dr. Jones proposes to offer prison records of these infractions, i.e., extrinsic evidence, Mr. Alston's motion is granted.

The court can allow inquiry on cross-examination if it is probative of the witness's character. *Id.* To the extent Dr. Jones has a good faith basis to ask about episodes of attempted staff bribery or making false allegations against staff, those would seem to be relevant to credibility, and the Court will allow a limited number of questions about the events themselves. But the fact that the prison system has found him guilty or responsible for such infractions will not be admitted, and Dr. Jones should not include such information in her questions. At some point, sustained questioning will implicate Fed. R. Evid. 403, so defense counsel should ask the most important questions first and be prepared to limit this line of inquiry so as not to cause unfair prejudice. Counsel are reminded that arguing with the witness will not be allowed.

### c. Other Lawsuits

Mr. Alston seeks to prohibit inquiry on cross-examination or other evidence that he has filed other lawsuits against prison officials. Doc. 97 at 5. Dr. Jones contends these may be used to establish Mr. Alston's "routine practice" or habit of filing lawsuits

against prison officials. Doc. 99 at 4. The cases cited by Dr. Jones are discovery cases, not evidence decisions, and do not support Dr. Jones' position. Fed. R. Evid. 406 governs evidence of habit, and the filing of a few lawsuits is not the kind of evidence of repetitive conduct contemplated by that rule. *See* Fed. R. Evid. 406 advisory committee's notes (offering as examples of habits as "going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving," in other words acts that "may become semi-automatic"); *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997) ("Federal Rule of Evidence 406 recognizes the probative value of repetitive conduct[.]").

Moreover, the fact that Mr. Alston has filed lawsuits against other prison staff is not particularly relevant. It is evident from Dr. Jones' brief that she wants to show the dismissal of those lawsuits, not the filing of those lawsuits, presumably to argue that Mr. Alston has a habit of filing meritless lawsuits. To the extent this is proper at all, which the Court doubts, it would be unfairly prejudicial, confuse the jury, and waste court time. Mr. Alston's motion to prohibit evidence that he has filed other lawsuits against prison officials is granted.

### d. Cross-Examination About Complaint

Mr. Alston seeks to bar Dr. Jones from using his unverified pleadings as evidence or to impeach him at trial with an unverified statement prepared by counsel. Doc. 97 at 5. But Mr. Alston himself filed the *pro se* complaint here, Doc. 1, and surely it qualifies as an admission, to the extent he makes statements within his personal knowledge. *See* Fed. R. Evid. 801(d). Mr. Alston has not pointed to any particular part of the complaint that

would be unfairly prejudicial or irrelevant. Dr. Jones may question Mr. Alston about relevant factual assertions within Mr. Alston's personal knowledge made in his *pro se* complaint. If Dr. Jones asks questions about matters alleged in the complaint that are not within Mr. Alston's personal knowledge, Mr. Alston may object and the Court will likely sustain the objection as not helpful to the jury, depending on context.

### e. Comments on Failure to Produce Evidence

Mr. Alston seeks to prohibit Dr. Jones from "making any reference to or comment about [Mr. Alston's] failure to call witnesses or produce evidence." Doc. 97 at 5–6. Dr. Jones agrees not to comment on the number of witnesses. Doc. 99 at 5. Beyond this, the motion is denied. During closing argument, counsel are permitted to comment on the presence or absence of evidence.

### f. Testimony By Dr. Jones as to Standard of Care

Mr. Alston seeks to exclude testimony by Dr. Jones that in her opinion she complied with the standard of care. Doc. 97 at 6. Dr. Jones does not intend to offer such testimony. Doc. 99 at 5–6. Dr. Jones may testify to her usual practices.

### g. Undisclosed Evidence

Finally, Mr. Alston moves to exclude evidence not disclosed. Doc. 97 at 6. This motion is premature and will be denied. Mr. Alston has not pointed to any specific exhibit on Dr. Jones' exhibit list that was not disclosed. If Dr. Jones seeks to admit any undisclosed evidence during the trial, Mr. Alston may object then.

It is **ORDERED** that:

1. Dr. Jones' motion to exclude Mr. Alston's non-retained experts, Doc. 83, is **DENIED**.

2. Subject to developments at trial, Dr. Jones' motion in limine, Doc. 95, is **GRANTED in part and DENIED in part** as follows:

    a. Dr. Jones' motion to exclude medical testimony of Dr. Toler and Dr. Wisely about the standard of care and future medical expenses is denied without prejudice to renewal at trial.

    b. All counsel and witnesses are precluded from referring to claims that were filed and later dismissed, but they are not prohibited from mentioning underlying facts, assuming those facts are relevant and not distracting.

    c. Mr. Alston is prohibited from testifying about medical causation.

    d. The parties are prohibited from offering evidence about specific prison rules or regulations that are no longer relevant given the Court's summary judgment rulings. Beyond this, Dr. Jones' motion to exclude any evidence or testimony about prison rules or regulations, including evidence about a federal Bureau of Prisons standard, is denied without prejudice to objection at trial.

    e. Counsel of both parties are prohibited from using exhibits during opening statements.

13

f. Counsel and the witnesses are prohibited from mentioning or asking about the following: 1) the statutory cap on non-economic damages, 2) liability insurance, 3) settlement discussions, 4) application of res ipsa loquitur, 5) Golden Rule arguments, 6) evidence suggesting a party will pay fees to a testifying expert witness, 7) prior lawsuits, claims, or alleged "bad acts" by Dr. Jones, 8) unspecified "safety rules" or other standards not specifically identified by a knowledgeable witness.

3. Subject to developments at trial, Mr. Alston's motion to exclude evidence, Doc. 96, is **GRANTED in part and DENIED in part** as follows:

   a. Dr. Jones shall not cross-examine Mr. Alston about any of his felony convictions that occurred more than ten years ago, subject to reconsideration at trial if and when Dr. Jones raises the matter outside the presence of the jury.

   b. Dr. Jones shall advise the Court and Mr. Alston's counsel outside the presence of the jury before making specific reference to details of Mr. Alston's conviction and sentence of current confinement or before asking Mr. Alston about the conviction. The Court expects to limit any such questioning to the name of the crime, the time and place of conviction, and the punishment.

   c. Dr. Jones shall not cross-examine Mr. Alston about the specific acts leading to his conviction unless he attempts to explain away the

convictions, deny his guilt, or otherwise makes the underlying facts leading to his conviction relevant, in which case the Court will revisit this issue at Dr. Jones' request.

d. Dr. Jones is prohibited from asking Mr. Alston about his arrests or other aspects of his criminal history.

e. Dr. Jones is prohibited from offering documentary evidence of Mr. Alston's disciplinary record, i.e. extrinsic evidence, to impeach his credibility.

f. On cross-examination, Dr. Jones may ask a limited number of questions about specific conduct reflected in Mr. Alston's prison disciplinary record to the extent the underlying conduct is relevant to his credibility. Dr. Jones shall not include any information about whether the prison system found him guilty or responsible for such infractions in her questions, and such evidence is excluded.

g. Dr. Jones is prohibited from inquiring about or offering evidence that Mr. Alston has filed other lawsuits against prison officials or about the results of those lawsuits.

h. Dr. Jones may question Mr. Alston about relevant factual statements and admissions in his *pro se* complaint, to the extent they are matters within his personal knowledge. Beyond that, Mr. Alston may object at trial if a particular question about the complaint is not likely to lead to evidence helpful to the jury.

15

i. Dr. Jones shall not comment on the number of Mr. Alston's witnesses. Counsel for both parties are permitted to comment on the presence or absence of evidence during closing argument.

   j. Dr. Jones shall not testify that in her opinion she complied with the standard of care but she may testify to her usual practices.

   k. Mr. Alston's motion to exclude evidence not disclosed is denied without prejudice to objection at trial, if and when Dr. Jones offers such evidence.

4. Counsel shall instruct clients and witnesses about the terms of this Order and direct them not to mention prohibited matters without permission from the Court.

This the 5th day of May, 2022.

_____
UNITED STATES DISTRICT JUDGE